NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 15 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AMIEE SULLENS,

          Appellant,

  v.

FRANK BISIGNANO, Commissioner of
Social Security,

          Appellee.

No. 25-2252

D.C. No.
2:24-cv-00804-JR

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Jolie A. Russo, Magistrate Judge, Presiding

Submitted June 8, 2026[**]
Portland, Oregon

Before: CHRISTEN, HURWITZ, and BADE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge Christen.

    Amiee Sullens appeals a district court judgment affirming a decision by an

Administrative Law Judge ("ALJ") denying her application for social security

---

    [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

disability insurance benefits and supplemental security income.

"We review the district court's order affirming the ALJ's denial of social security benefits de novo and will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020) (cleaned up). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.       Sullens argues that the ALJ erred by failing to evaluate her incontinence at step two of the five-step sequential analysis. But the ALJ ruled in favor of Sullens at step two and discussed incontinence at steps three and four. Thus, any error was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

2.       Sullens argues that the ALJ improperly relied on the absence of supportive medical evidence in discrediting her testimony about her symptoms. That is not accurate. Rather, the ALJ found her testimony inconsistent with the longitudinal medical record and consultants' reports. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (explaining that although "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony," "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's

25-2252

subjective testimony, the ALJ may indeed weigh it as undercutting such testimony"); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of the nonexamining advisor . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

The ALJ's findings were based on substantial evidence in the record. Sullens reported to doctors that her condition was controlled by medication and that she did not experience joint swelling, joint pain flare ups, or medication side effects. The longitudinal medical record demonstrated that Sullens's joint disease was stable, she had normal muscle strength and gait, she did not display acute distress, and she displayed full range of motion in her upper and lower extremities and could move them without pain or tenderness. Medical records also documented normal mood, affect, and ability to follow simple and complex tasks. *See Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025) (affirming credibility finding where ALJ explained that claimant's testimony of fibromyalgia pain "was inconsistent with evidence indicating that her symptoms improved with conservative treatment" and "that she had mostly normal examinations"); SSR 12-2p, 77 Fed. Reg. 43640, 43642 (July 25, 2012) (noting "longitudinal records reflecting ongoing medical evaluation and treatment" are "especially helpful" when a person alleges fibromyalgia).

Substantial evidence also supports the ALJ's findings as to Sullens's claims of incontinence. Sullens's urologist concluded that because she had a "completely

normal-appearing bladder and urethra," any incontinence might "simply reflect an overactive bladder, or excess caffeine consumption." Likewise, her abdominal x-rays indicated "nonobstructive bowel gas pattern," and her defecography results noted "mild decreased motility within the rectum." In addition, the ALJ reasonably considered the normal results from the gastric emptying study which were consistent with the absence of dumping syndrome, a disorder associated with diarrhea.[1]

3.      Sullens argues the ALJ erred at step three of the sequential analysis, and the evidence requires a finding that her impairments meet or equal listed impairments.[2] We find no error.

a.      First, Sullens failed to provide the required medical evidence that her fibromyalgia equaled a listed impairment, and there was no "prior administrative medical finding . . . supporting the medical equivalence finding," or a "report from the [Appeals Council's] medical support staff." SSR 17-2p, 82 Fed. Reg. 15263,

---

[1]      *See* Kevin P. Banks et. al., *Scintigraphy of Gastrointestinal Motility: Best Practices in Assessment of Gastric and Bowel Transit in Adults*, 44 RadioGraphics e230127 (2024), https://doi.org/10.1148/rg.230127 [https://perma.cc/RV2W-7X6V]; Silvana Obici*, Understanding Dumping Syndrome: Symptoms, Diet and Treatment Guide,* Stony Brook Med. Health News (Sept. 26, 2025), https://health.stonybrookmedicine.edu/understanding-dumping-syndrome-symptoms-diet-and-treatment-guide. [https://perma.cc/U3HU-A2MP]

[2]      Because fibromyalgia is not a listed impairment, the issue is whether it "medically equals a listing . . . or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p, 77 Fed. Reg. at 43644.

15265 (Mar. 27, 2017); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

b.　　Second, the ALJ's conclusions were supported "at a later step in the sequential evaluation process" in the RFC analysis. SSR 17-2p, 82 Fed. Reg. at 15265; *see also Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (finding no error where ALJ supported step three conclusion under a different section). Those findings were supported by medical evidence that Sullens could move her extremities without pain or tenderness and had a normal gait. Sullens also reported to doctors that she was not in acute distress or experiencing flares of joint pain or swelling. Substantial evidence also supports the ALJ's determination that Sjogren's syndrome did not equal a listed impairment, given medical records describing Sullens's symptoms as "mild" and manageable with eye flushes.

4.　　At step five, a vocational expert ("VE") identified jobs that Sullens could perform that required training of a "short demonstration up to and including [one] month." 2 U.S. Dep't of Lab., Emp. & Training Admin., *Dictionary of Occupational Titles*, app. C, at 1009 (4th ed. 1991). Sullens's attorney asked the VE whether someone who could only "handle occasional supervision" and only perform twenty minutes of a required hour-long training could retain employment, and the

VE responded, "No." Sullens argues the ALJ erred therefore erred in finding that she could perform jobs in the national economy because her RFC specifies only "occasional contact with coworkers, supervisors, and the public."

But Sullens provided no evidence that she could only interact with others for twenty minutes, and the record does not indicate that she has significant difficulty interacting with others. Nor does the RFC incorporate a twenty-minute limitation. The ALJ appropriately relied on the VE's conclusion that someone with Sullens's RFC, including some limitations on social interaction, could perform the jobs and complete the training periods described. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

**AFFIRMED.**

*Sullens v. Bisignano*, No. 25-2252

CHRISTEN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision with one exception. I respectfully dissent from the majority's conclusion that the agency did not err when evaluating the evidence concerning Sullens's fecal incontinence. Because this error was not harmless, I would affirm in part, reverse in part, and remand.

When evaluating evidence to determine a claimant's RFC, an ALJ considers the claimant's subjective testimony to help support or establish the presence of symptoms that are not evident from objective medical evidence alone. *See* 20 C.F.R. § 404.1529. Where an ALJ determines that a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the symptoms alleged and there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms only if there are "clear and convincing" reasons to do so. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

Sullens testified, and reported to providers, that she experiences a frequent urge to urinate and defecate, cannot be away from a bathroom for more than 15 minutes at a time because of her incontinence, and that she "sometimes" has accidents that need to be cleaned up. The incontinence Sullens reports appears quite severe and disruptive, with chronic diarrhea that is not managed successfully

1

by medication and loose stools occurring about ten times a day. In 2021 she reported having full fecal incontinence twice a month. The ALJ only briefly discussed Sullens's testimony related to fecal incontinence, and concluded that Sullens had "work limitations from gastrointestinal disorders, but the record does not appear to include objective medical testing to support the claimant's alleged degree of incontinence."

Contrary to the ALJ's conclusion, the medical findings in the record do not contradict Sullens's subjective testimony about the effects, limitations, and prognosis related to her incontinence. The only reason the ALJ appears to have given for discounting Sullens's subjective testimony about the severity and limitations caused by her fecal incontinence was that the results from a gastric emptying exam in 2020 were "normal." But in 2021, the exam results showed Sullens experienced gastroparesis. Notably, the gastric emptying study was conducted to better understand whether Sullens was experiencing gastroparesis related to her diabetes. The test does not measure diarrhea or incontinence symptoms. Moreover, in diabetes patients, "[g]astroparesis may present with concomitant chronic diarrhea." *See* Maxime Jaccard et al., *Gastric Peroral Endoscopic Myotomy Improves Chronic Diarrhea in Patients with Refractory Gastroparesis*, 38 Ann. of Gastroenterology 255 (2025), https://pmc.ncbi.nlm.nih.gov/articles/PMC12070340/ [https://perma.cc/6ERY-99GC].

Thus, a "normal" gastric emptying test result does not suggest Sullens does not experience diarrhea or incontinence.

Additional evidence in the record supports, rather than undermines, Sullens's subjective testimony. An anoscopy from 2022 showed Sullens had "[m]oderate rectocele" and "small internal hemorrhoids," which are correlated with fecal incontinence. *See Fecal Incontinence* (Nov. 27, 2024), https://www.mayoclinic.org/diseases-conditions/fecal-incontinence/symptoms-causes/syc-20351397 [https://perma.cc/JLC8-2ZDZ]. Sullens also reported to providers that she had tried various medications for diarrhea and fecal incontinence, but these were ineffective. This record persuades me that Sullens's fecal incontinence complaints were not discounted by "clear and convincing" evidence. *Ferguson*, 95 F.4th at 1199 (citation omitted).

The ALJ's errors are not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054–55 (9th Cir. 2006). To determine whether an error was harmless, we "look at the record as a whole to determine whether the error alters the outcome of the case." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The severity and intensity of Sullens's alleged fecal incontinence poses obvious limits to her daily activities and to her concentration, persistence, and pace, thereby affecting her work abilities. Because the ALJ discounted her testimony, he did not incorporate these critical limitations into the RFC. To the contrary, the ALJ

3

determined that Sullens retained the ability to "maintain regular attendance and be punctual within customary tolerances" and "perform activities within a schedule." By my read, the medical evidence related to Sullens's fecal incontinence is highly suggestive that she would require additional breaks and absenteeism that the vocational expert testified would limit her ability to sustain competitive employment. For these reasons, I conclude that the RFC and step-five findings are not supported by substantial evidence.

I would affirm in part, reverse in part, and remand for reconsideration of the RFC with the requisite limitations associated with severe and chronic fecal incontinence.